## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**OVIER DELGADILLO-BENUELOS,**

       **Petitioner,**

       **v.**

**WARDEN, NOBLE CORRECTIONAL
INSTITUTION,**

       **Respondent.**

**CASE NO. 2:20-CV-4996
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson**

### REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Response, and the exhibits of the parties. For the reasons that follow, it is **RECOMMENDED** that this action be **DISMISSED**.

### I.      BACKGROUND

Petitioner challenges his August 23, 2018, convictions in the Franklin County Court of Common Pleas pursuant to his guilty plea on two counts of trafficking in heroin. The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case:

> {¶ 1} Defendant-appellant, Ovier Delgadillo-Banuelos, appeals from the judgment of the Franklin County Court of Common Pleas sentencing him to 16 years of imprisonment and ordering him to pay a fine of $35,000 following his entry of guilty pleas to 2 counts of trafficking in heroin. For the reasons outlined below, we affirm.

> {¶ 2} On January 5, 2018, appellant, an undocumented immigrant from Mexico, was indicted on 2 counts of trafficking in heroin arising from events occurring on December 27, 2017. Pursuant to R.C. 2925.03(A)(2) and (C)(6)(g), Count 1 of the indictment alleged a first-degree felony in that the amount of heroin involved equaled or exceeded 100 grams. Pursuant to R.C. 2925.03(A)(2) and (C)(6)(e), Count 2 alleged a second-degree felony in that the amount of heroin involved equaled or exceeded 10 grams but less than 50 grams.

{¶ 3} On July 23, 2018, appellant entered guilty pleas on each count of the indictment. The trial court accepted appellant's guilty pleas after a Crim.R. 11 colloquy. FN1 The trial court ordered a pre-sentence investigation ("PSI") pursuant to the joint recommendation of the prosecutor and defense counsel and deferred the matter for sentencing.

FN1:  All trial proceedings in this case were facilitated by court-appointed Spanish language interpreters.

{¶ 4} On August 23, 2018, the trial court conducted a sentencing hearing at which the court imposed a sentence of 11 years imprisonment on Count 1, and 5 years imprisonment on Count 2, with the sentences to be served consecutively. In addition, the court imposed maximum fines of $20,000 on Count 1, and $15,000 on Count 2, for a total fine of $35,000. The court memorialized its judgment in an entry filed August 27, 2018 and filed a corrected judgment entry on September 28, 2018.

{¶ 5} Appellant filed a timely notice of appeal from the trial court's initial judgment entry and sets forth the following three assignments of error for our consideration:

[I]. Ovier Delgadillo-Banuelos received ineffective assistance of counsel when counsel failed to file an affidavit of indigency on Mr. Delgadillo-Banuelos' behalf, or otherwise advocate against financial sanctions, and Mr. Delgadello-Banuelos was in fact indigent.

[II]. Ovier Delgadillo-Banuelos received ineffective assistance of counsel when his attorney failed to argue that the two counts of trafficking heroin were allied offenses.

[III]. The trial court committed plain error when it imposed multiple sentences on the two counts of trafficking heroin, which were allied offenses.

***

{¶ 11} At the plea hearing, the state's recitation of the facts established that appellant was the subject of a Columbus police investigation for approximately three weeks prior to his arrest on December 27, 2017. During that investigation, the police identified appellant's residence as well as a motel room where appellant temporarily stayed and stored drugs. The police also identified one of appellant's customers, who reported that he had been purchasing heroin from appellant for approximately 3 years. On December 27, 2017, police recovered 48 grams of heroin during a search of appellant's vehicle, and later that day recovered 160 grams of heroin from appellant's motel room. The state further asserted that the heroin found at both locations was to be sold on the streets of Columbus.

{¶ 12} The PSI report provided a more detailed recitation of the facts underlying appellant's crimes. According to the report, on December 27, 2017, the Central Ohio HIDTA Drug Task Force conducted surveillance on appellant, who was suspected of delivering small amounts of heroin to multiple locations in the Central Ohio area. At 1:51 p.m., police observed appellant meet a man in the parking lot of a retail establishment. The man entered appellant's vehicle; he returned to his own vehicle less than one minute later. The man drove away, but was later apprehended by the police. The man admitted to purchasing one gram of black tar heroin for $40 from appellant; he further admitted that he had been purchasing heroin from appellant for the past three years.

{¶ 13} Thereafter, upon further surveillance of appellant, the police observed him enter a residence at 835 Seymour. Appellant returned to his vehicle, and police subsequently effectuated a traffic stop. Pursuant to a search of appellant's person and his vehicle, police recovered a total of 49.071 grams of heroin, which had been separated into four plastic bags. Police also recovered 2 cell phones and $1,711 in cash. Police transported appellant to police headquarters for processing and a formal interview. Appellant refused consent to search his motel room at 1309 St. James Lutheran Lane, so the police obtained a search warrant, which was executed at 8:02 p.m. Pursuant to that search, the police recovered a total of 159.1 grams of heroin, which had been separated into 9 plastic bags/balloons. At 8:30 p.m., the police executed a second search warrant at 910 Center Street, a mobile home police had observed appellant enter during the time he was under surveillance. Police believed this location was a "stash house" for drugs. (PSI at 4.). Pursuant to that search, the police recovered more heroin and 4 bottles of pills. The laboratory results of the drugs recovered at this location were not included in the PSI report.

*State v. Delgadillo-Benuelos*, 10th Dist. No. 18AP-729, 2019 WL 5078717, at *1–3 (Ohio Ct. App. Oct. 10, 2019). On October 10, 2019, the state appellate court affirmed the judgment of the trial court. *Id.* On September 1, 2020, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Delgadillo-Benuelos*, 159 Ohio St.3d 1487 (Ohio 2020).

On December 18, 2019, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B), asserting that he had been denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim of a defective indictment. (Doc. 3, PAGEID # 207, 228). On February 11, 2020, the appellate court denied the Rule 26(B) application. (PAGEID # 225). On April 28, 2020, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (PAGEID # 258).

On September 23, 2020, Petitioner filed this *pro se* habeas corpus petition. He asserts that he was denied the effective assistance of counsel because his attorney failed to file an affidavit of indigency or otherwise advocate against the imposition of financial sanctions (claim one); that he was denied the effective assistance of counsel because his attorney failed to argue that Petitioner's convictions involved allied offenses of similar import (claim two); and that the trial court committed plain error by imposing multiple sentences on allied offenses of similar import (claim three). It is the Respondent's position that claim three is procedurally defaulted and his other claims are without merit.

## II. CLAIMS TWO AND THREE

Before considering the merits of this case, the Court first must determine whether Petitioner has cleared certain procedural hurdles. Respondent says he has not with regard to claim three. And, as explained below, the issue of procedural default collides with claim two as well.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust claims

but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Over time, the term "procedural default" has come to describe a situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the

court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id*.

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, Petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, Petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct.

1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to "'protect the integrity' of the federal exhaustion rule." *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting *id.*, at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "conceptually exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

## A.    Procedural Default

As noted, Respondent asserts that claim three is procedurally defaulted. In that claim, Petitioner asserts that the trial court wrongly imposed separate sentences on allied offenses of similar import. The state appellate court reviewed this claim for plain error only because of Petitioner's failure to object:

> [A]ppellant contends that the trial court committed plain error when it imposed multiple sentences on the two counts of trafficking heroin, as the counts constituted allied offenses of similar import. We disagree.

{¶ 7} As noted in appellant's assignment of error, he did not object at the sentencing hearing or raise the issue of allied offenses before the trial court. As such, appellant has forfeited all but plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 3. Forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. *Id*. In a plain error analysis, an accused must demonstrate a reasonable probability that the convictions are allied offenses of similar import committed with the same conduct and without a separate animus. *Id*. Absent such a showing, an accused "cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *Id*.

{¶ 8} The allied offenses statute, R.C. 2941.25, provides:

(A) Where the same conduct by [the] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct resulted in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 9} Construing R.C. 2941.25, the Supreme Court of Ohio has explained that "a 'conviction' consists of a guilty verdict and the imposition of a sentence or penalty." (Emphasis sic). *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶ 12. As such, "R.C. 2941.25(A)'s mandate that a defendant may be 'convicted' of only one allied offense is a protection against multiple sentences rather than multiple convictions." *Id*. at ¶ 18.

{¶ 10} "To determine whether two offenses are allied offenses that merge into a single conviction, a court must evaluate three separate factors: the conduct, the animus, and the import." *State v. Harris*, 10th Dist. No. 15AP-683, 2016-Ohio-3424, ¶ 42, citing *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, paragraph one of the syllabus. "If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance–in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Ruff* at ¶ 25. The allied-offense analysis "is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id*. at ¶ 26.

\*\*\*

{¶ 14} Appellant was found guilty of two counts of trafficking heroin in violation of R.C. 2925.03(A)(2), which forbids a person to "knowingly * * * [p]repare for

shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."

{¶ 15} Appellant contends that the 2 counts of heroin trafficking were allied offenses subject to merger because: (1) they were not committed separately, in that the drugs were recovered on the same day and were the same substance (i.e., heroin); (2) they were not committed with a separate animus, as both counts involved a singular motivation (i.e., distribution); and (3) they were not dissimilar in import or significance, as they did not involve separate victims and no separate or identifiable harm resulted (i.e., harm only to society in general). Appellant relies on *State v. Daboni*, 4th Dist. No. 18CA3, 2018-Ohio-4155 in support of his argument.

There, Daboni was found guilty of 2 counts of trafficking in heroin and 1 count of possession of heroin arising from the search of his residence on September 4, 2014. The trafficking counts stemmed from recovery of approximately 20 grams of separately packaged heroin from 2 different locations in the downstairs portion of Daboni's residence. The possession count stemmed from recovery of approximately 25 grams of non-packaged heroin from an upstairs bedroom closet of the same residence. The trial court merged the trafficking counts for purposes of sentencing, but refused to merge the possession count with the trafficking counts.

{¶ 16} On appeal, the court concluded that the trial court should have merged the trafficking and possession offenses for purposes of sentencing. Specifically, the court found that the offenses were similar in significance and import because the victims of the offenses were the same, i.e., society in general, and the harm was not separate and identifiable. The court further found that the offenses were not committed separately, as all the heroin was found on the same day inside Daboni's residence. Lastly, the court found that the offenses were committed with the same animus or motivation, i.e., to traffic the heroin.

{¶ 17} *Daboni* is inapposite, as the 2 heroin stashes were recovered pursuant to a single search conducted inside the same residence, albeit in different locations in the residence. Here, the heroin was recovered during 2 separate searches which yielded differing quantities of heroin and which occurred at separate times and at 2 different locations. As noted, the initial search, which yielded approximately 49 grams of heroin, was conducted of appellant's person and vehicle pursuant to a traffic stop; the subsequent search, which yielded approximately 160 grams of heroin, was conducted at appellant's motel room pursuant to a search warrant.

{¶ 18} Moreover, appellant acknowledges this court's decision in *State v. Gomez*, 10th Dist. No. 16AP-560, 2017-Ohio-8832, wherein we found no plain error in the trial court's failure to merge five trafficking counts involving different quantities of the same type of drug (i.e., heroin) recovered on the same day at five different

locations.FN2 In so concluding, we noted Gomez's reliance on several federal cases holding that possession of drug stashes recovered on the same day constitute a single offense under the federal statute for possession with intent to distribute (21 U.S.C. 841(a)(1)). Appellant cites two of the same federal cases in support of his argument here. *See United States v. Stephens*, 118 F.3d 479 (6th Cir. 1997); *United States v. Woods*, 568 F.2d 509 (6th Cir. 1978). However, in *Gomez*, this court noted that other federal courts "have held that convictions for multiple counts of possession on the same date involving distinct stashes of drugs do not raise multiplicity or double jeopardy issues." *Id*. at ¶ 20, fn. 1. In particular, this court cited *State v. Maldonado*, 849 F.2d 522, 524 (11th Cir. 1988); *Davis v. Berghuis*, E.D. Mich. No. 2:07-CV-10129 (Apr. 30, 2008); and *United States v. Williams*, 339 F. App'x. 654, 658 (7th Cir. 2009). FN3.

FN2: Gomez challenged the five counts in the indictment as multiplicitous. We observed, however, that under Ohio law, "the primary legislative statement on multiplicity is set forth in R.C. 2941.25, which addresses allied offenses of similar import." *Id*. at ¶ 21, citing *State v. Damron*, 10th Dist. No. 12AP-209, 2012-Ohio-5977, ¶ 8; *State v. Painter*, 12th Dist. No. CA2014-03-022, 2014-Ohio-5011, ¶ 17.

FN3: *Maldonado* involved two different quantities of cocaine found in two separate locations on the same date; *Davis* involved two different quantities of cocaine found on the defendant and in a bedroom on the same date; and *Williams* involved two different quantities of crack cocaine found in the defendant's car and his apartment on the same date.

{¶ 19} The *Gomez* court further recognized and relied on decisions of other Ohio courts of appeals finding that recovery of drugs on the same date is not dispositive of the allied offense issue. *Id*. at ¶ 24, citing *State v. Lewis*, 12th Dist. No. CA2008-10-045, 2012-Ohio-885, ¶ 21 (defendant sold less than five grams of crack cocaine to an undercover officer, left the scene, and was later stopped by law enforcement officers who found crack cocaine rocks and a bag of crack cocaine defendant had discarded at the time he was stopped); *State v. Williams*, 5th Dist. No. 11-CA-115, 2012-Ohio-3211, ¶ 20 (selling or offering to sell on same date separated in time and space from possession of same type of drug in a different location); and *State v. Ward*, 3d Dist. No. 13-10-11, 2011-Ohio-254, ¶ 29 (three separate sales of marijuana on same date considered three separate transactions).

{¶ 20} Appellant's attempt to distinguish *Gomez* on grounds that it involved much larger quantities of heroin than that in the present case is unavailing. The import of *Gomez* is that where the facts presented indicate law enforcement's recovery on the same date of differing quantities of the same type of illicit substance at different locations, R.C. 2941.25 permits a conviction and sentence for each of the offenses. Thus, pursuant to *Gomez*, the trial court committed no error, plain or otherwise, in sentencing appellant separately for the two trafficking offenses.

{¶ 21} Appellant's [] assignment of error is overruled.

*State v. Delgadillo-Baneulos*, 2019 WL 5078717, at *1–4.

Petitioner has waived his claim that he was improperly sentenced on allied offenses of similar import or in violation of the Double Jeopardy Clause by failing to make a contemporaneous objection at the trial. This Court has explained Ohio's contemporaneous objection rule many times. It "requires the parties to preserve errors for appeal by calling them to the attention of the trial court at a time when the error could be avoided or corrected. It has been held time and again that the rule is an adequate and independent state ground of decision sufficient to justify the procedural default of a federal constitutional claim." *Twyford v. Bradshaw*, No. 2:03-cv-906, 2017 4280955, at *19 (S.D. Ohio Sept. 27, 2017) (citing *Hand v. Houk*, No. 14-3148, 2017 WL 3947732, at *18 (6th Cir. Sept. 8, 2017). And enforcement of Ohio's contemporaneous-objection rule is an independent and adequate state ground sufficient to bar habeas relief. *See, e.g.*, *Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) ("Failure to adhere to the firmly-established Ohio contemporaneous objection rule is an independent and adequate state ground of decision."); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011) ("Ohio's contemporaneous objection rule is a firmly established procedural rule that is an adequate and independent state ground to foreclose federal relief."); *Smith v. Bradshaw,* 591 F.3d 517, 522 (6th Cir. 2010) (same).

Further, the state appellate court's plain error review does not save Petitioner from procedural default. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006). The Sixth Circuit has held that "[a] plain error analysis is not tantamount to a review on the merits," meaning the state appellate court's review for plain error does not imply it overlooked Petitioner's procedural default, *i.e.* his failure to object at trial. *Scott v. Mitchell*, 209 F.3d 854, 865 (6th Cir. 2000); *see also Lundgren*, 440 F.3d at 765 (holding that plain error analysis is "viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the

merits"). Said differently, an appellate court's alternative ruling on the merits does not remove the procedural default. *Conley*, 505 F. App'x at 506 (citing *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998)).

As a last-ditch effort to save claim three, Petitioner says that the Court can consider it because he raised it in the context of arguing that the state appellate court erroneously applied plain error review. (*Petitioner's Response*, Doc. 7, PAGEID # 339–40). But that is a challenge to how Ohio applies its own law, which is not cognizable in habeas. *See Baston v. Bagley*, 282 F. Supp. 2d 655, 666 (N.D. Ohio 2003), *aff'd*, 420 F.3d 632 (6th Cir. 2005) (citing *Lewis v. Jeffers*, 497 U.S. 764, 782 (1990); *Bugh v. Mitchell*, 329 F.3d 496, 511 (6th Cir. 2003)) ("Petitioner's contention is, in effect, a claim that the [state appellate court] failed properly to apply Ohio's plain error doctrine. That contention, which challenges the state court's application of state law, is not cognizable in a federal habeas corpus proceeding.").

In sum, claim three is procedurally defaulted.

**B.  Cause and Prejudice**

To overcome his procedural default, Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to object to the imposition of separate sentences on two counts of trafficking in heroin as a violation of the Double Jeopardy Clause and Ohio's statute on allied offenses of similar import. This also happens to be claim two.

To begin, "petitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (internal citation omitted) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999)). A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla*, 370 F.3d 498. Instead, in order to establish cause, a petitioner "must present a

substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007), *cert. denied sub nom. Hartman v. Bobby*, 554 U.S. 924 (2008). The ineffective assistance of counsel may constitute cause for a procedural default, so long as that claim is not procedurally defaulted. *See Gross v. Warden, Lebanon Corr. Inst.*, 426 F. App'x 349, 360 (6th Cir. 2011) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)).

The state appellate court rejected Petitioner's claim of ineffective assistance of counsel:

> {¶ 41} Appellant next contends that trial counsel was ineffective in failing to argue that his heroin trafficking offenses should merge for purposes of sentencing. Given our conclusion in the third assignment of error that the offenses were not allied, trial counsel's failure to argue merger did not constitute ineffective assistance of counsel. *See State v. White*, 12th Dist. No. CA2018-12-087, 2019-Ohio-3053, ¶ 21.

*State v. Delgadillo-Banuelos*, 2019 WL 5078717, at *8.

This Court conducts a *de novo* review of the claim when determining whether Petitioner can establish cause for a procedural default. *See Hively v. Warden*, No. 2:17-cv-222, 2018 WL 722864, at *7 (S.D. Ohio Feb. 5, 2018) (citing *Hall v. Vasbinder*, 563 F.3d 222, 236–37 (6th Cir. 2009) ("An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel. The latter must meet the higher AEDPA standard of review, while the former need not.").

"In all criminal prosecutions," the Sixth Amendment affords "the accused. . . the right. . . to Assistance of Counsel for his defense." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming the ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Id.* at 687; *Hale v. Davis*, 512

F. App'x 516, 520 (6th Cir.), *cert. denied sub. nom. Hale v. Hoffner*, 134 S. Ct. 680 (2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness.'" *Poole v. MacLaren*, 547 F. App'x 749, 754 (6th Cir. 2013) (internal quotation marks omitted) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011)). To make such a showing, a petitioner must overcome the "strong [ ] presum[ption]" that his counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 687. "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). The traditional test for double jeopardy claims is the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (requiring the court to determine whether each charged offense "requires proof of an additional fact which the other does not"). The *Blockburger* test is designed to deal with the situation where closely connected conduct results in multiple charges under separate statutes. Under *Blockburger*, the critical question is whether the multiple charges in reality constitute the same offense. Thus, the *Blockburger* test focuses on whether the statutory elements of the two crimes charged are duplicative. If the

elements of the two statutes are substantially the same, then double jeopardy is violated by charging the defendant under both.

Yet, even "[w]here two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so." *Bates v. Crutchfield*, 2016 WL 7188569, at *5 (S.D. Ohio Dec. 12, 2016) (citing *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); *Garrett v. United States*, 471 U.S. 773, 779 (1985); *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)). Thus, "[e]ven if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Volpe v. Trim*, 708 F.3d 688, 697 (6th Cir. 2013) (citing *Johnson*, 467 U.S. at 499 n. 8; *Hunter*, 459 U.S. at 368–69). "Specifically, '[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Grable v. Turner*, No. 3:16-cv-273, 2016 WL 7439420, at *6 (S.D. Ohio Dec. 27, 2016) (quoting *Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014)) (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)). "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Id*. (quoting *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013)) (citing *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989)).

> In habeas review [] this Court's role is a very limited one. "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005). Therefore, "for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination." *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir.1989); *see also Jackson v. Ray*, 292 F. App'x 737, 741 (10th Cir.2008) ("In a habeas corpus proceeding under section 2254, a federal court should defer to a state court's interpretation of state law in determining whether an incident constitutes one or

more than one offense for double jeopardy purposes."); *Dowdell v. Wilson*, 2007 WL 1299269, at *13 (N.D. Ohio May 2, 2007).

*Blandin v. Williams*, No. 3:08CV2172, 2009 WL 1862527, at *4 (N.D. Ohio June 26, 2009) (footnote omitted). "An Ohio court of appeals decision of a double jeopardy claim which is limited to the application of Ohio Rev. Code § 2941.25 is entirely dispositive of the federal double jeopardy claim." *Grable v. Turner*, No. 3:16-cv-7439420, 2016 WL 7439420, at *6 (S.D. Ohio Dec. 27, 2016) (citing *Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014) (internal citation omitted)). "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013) (citing *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989)).

Here, the state appellate court found that the charges at issue involve two separate offenses subject to separate penalties under Ohio law in view of the discovery of drugs by police in separate locations at different times. This Court is bound by that determination. *See Volpe*, 708 F.3d 688 (citing *Banner*, 886 F.2d at 780). Petitioner therefore cannot establish the ineffective assistance of counsel based on his attorney's failure to object to separate sentences on these convictions. *See Stoermer v. Warden, London Corr. Inst.*, No. 3:20-cv-133, 2020 WL 6392446, at *6 (S.D. Ohio Nov. 2, 2020) (finding no double jeopardy violation for two counts of drug trafficking where drugs recovered from house and car); *Blandin*, 2009 WL 1862527, at *4–5 (finding no double jeopardy violation for two counts of possession of drugs found on person and in house).

Thus, claim two does not provide Petitioner a basis for relief, and he has failed to establish cause for his procedural default of habeas corpus claim three.

### III.    CLAIM ONE

In claim one, Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to file an affidavit of indigency on his behalf or object to the imposition of financial sanctions.   The state appellate court rejected the claim on the merits:

> {¶ 23} To establish ineffective assistance of counsel, an accused must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the accused. *State v. Jackson*, 107 Ohio St.3d 53, ¶ 133 (2005), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to make either showing is fatal to the claim. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697. ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

> {¶ 24} To demonstrate deficient performance, an accused must prove that counsel's performance fell below an objective level of reasonable representation. *Jackson* at ¶ 133. The accused must overcome the strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland* at 689. To establish prejudice, an accused must demonstrate that a reasonable probability exists that but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 204, citing *Strickland* at 687–88.

> {¶ 25} Appellant first contends that trial counsel was ineffective in failing to file an affidavit of indigency alleging that he was unable to pay the mandatory fines set forth in R.C. 2929.18(B)(1) applicable to his felony drug offenses. Appellant maintains that the trial court would not have imposed the fines upon him had the affidavit of indigency been filed. We disagree.

> {¶ 26} R.C. 2929.18(B)(1) specifies that for a first- or second-degree felony violation of R.C. Chapter 2925, "the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense pursuant to division (A)(3) of this section." For a first-degree felony, the maximum fine is $20,000; for a second-degree felony, the maximum fine is $15,000. R.C. 2929.18(A)(3)(a) and (b). However, R.C. 2929.18(B)(1) further provides that "[i]f an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose such a mandatory fine upon the offender."

> {¶ 27} Shortly after he was indicted, appellant filed an affidavit of indigency alleging he was financially unable to retain private counsel to defend him in the

matter. He did not, however, file a separate affidavit prior to sentencing alleging he was "indigent and unable to pay the mandatory fine." This court has determined that "[a]n offender's indigency for purposes of receiving appointed counsel is separate and distinct from his or her indigency for purposes of avoiding having to pay a mandatory fine." *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 79 (10th Dist.), citing *State v. Gipson*, 80 Ohio St.3d 626, 631-33 (1998). There is a "'difference between a defendant's inability to raise an initial retainer in order to obtain trial counsel and the ability to gradually pay an imposed mandatory fine over a period of time.'" *State v. Burnett*, 10th Dist. No. 08AP-304, 2008-Ohio-5224, ¶ 9, quoting *State v. Banks*, 6th Dist. No. WD-06-094, 2007-Ohio-5311, ¶ 15. Accordingly, an accused may not rely on the affidavit of indigency for the purpose of receiving appointed counsel to demonstrate indigency for the purpose of avoiding payment of a mandatory fine after conviction. *Pilgrim* at ¶ 79, citing *Banks* at ¶ 15.

{¶ 28} The failure to file an R.C. 2929.18(B)(1) affidavit alleging an offender's indigency and inability to pay a mandatory fine may constitute ineffective assistance of counsel where the record demonstrates a reasonable probability that the trial court would have found the defendant indigent, thereby relieving him of the obligation to pay a mandatory fine. *State v. Parsley*, 10th Dist. No. 09AP-612, 2010-Ohio-1689, ¶ 65, citing *State v. Gilmer*, 6th Dist. No. OT-01-015, 2002-Ohio-2045. However, an offender who files an affidavit alleging that he or she is indigent and is unable to pay a mandatory fine is not automatically entitled to a waiver of the mandatory fine. *State v. Smith*, 10th Dist. No. 16AP-772, 2017-Ohio-7740, ¶ 46, citing *State v. Small*, 10th Dist. No. 14AP-659, 2015-Ohio-3640, ¶ 40-41; Gipson at 634. For purposes of R.C. 2929.18(B)(1), being "indigent" and being "unable to pay" are not the same. Indigency concerns a defendant's current financial situation, whereas an inability to pay encompasses an offender's future financial situation as well. *Id*. at 636. The burden is upon the offender to affirmatively demonstrate that he or she is indigent and unable to pay the mandatory fine. *Id*. at 635.

{¶ 29} Nonetheless, before imposing a financial sanction, including a mandatory fine under R.C. 2929.18(B)(1), the court must consider the offender's present and future ability to pay the amount of the sanction or fine. R.C. 2929.19(B)(5). *Pilgrim*, at ¶ 76. The statute does not set forth express factors that must be considered or specific findings that must be made regarding the offender's ability to pay. *Id*. However, there must be some evidence in the record to demonstrate that the trial court acted in accordance with the legislative mandate that it consider the offender's present and future ability to pay the sanction or fine. *Smith*, at ¶ 47, citing *State v. Hayes*, 10th Dist. No. 08AP-233, 2009-Ohio-1100, ¶ 14; *State v. Saracco-Rios*, 12th Dist. No. CA2016-02-011, 2016-Ohio-7192, ¶ 10, citing *State v. Lang*, 12th Dist. No. CA2011-03-007, 2011-Ohio-5742, ¶ 12. Compliance with R.C. 2929.19(B)(5) may be shown through the trial court's consideration of a PSI report, which typically provides financial and personal information regarding the offender. *Id.*

{¶ 30} The PSI report in the instant case reveals that appellant was born and raised in Mexico and does not read or write English. His legal name is Miguel Angel Lopez Figueroa; Ovier Delgadillo-Banuelos is an alias. He completed formal schooling through the 9th grade. He dropped out of school so he could work to support his family. Appellant was 38 years old at the time of the instant offenses. He is married and has two school-age daughters. His wife and daughters still reside in public housing in Mexico. Appellant described his physical health as "excellent." (PSI report at 9.) He is medication-free and has never been hospitalized or undergone any surgeries. He has no mental health or alcohol related issues.

{¶ 31} Appellant asserts his finances are "a bit bad." *Id.* at 10. Specifically, he alleges he has no assets, is behind on his water bill, has an outstanding bank loan, and owes money on his house in Mexico. Although he was employed at an auto parts store, he could not pay all of his bills. He acknowledges that he has employment experience with auto parts and customer service. Appellant alleges that the bank to whom he owed money put him in contact with the individual for whom he sold drugs in the United States.

{¶ 32} Appellant came to the United States illegally sometime prior to July 2013 and was deported on July 16, 2013 following his conviction for felony possession of a controlled substance. According to appellant, he returned to the United States illegally only one week prior to his arrest on the instant offenses. While in the United States, he has been unemployed and made money through the sale of drugs. He refuses to provide any details about his involvement in the drug trade, including for whom he is working and how much he is paid. As noted above, the police recovered $1,711 in cash on appellant's person pursuant to a search incident to his arrest. In addition to the money he makes trafficking drugs, appellant also receives money from his wife who works in Mexico. As to future employment, appellant notes that he faces mandatory prison time as well as the possibility of deportation following completion of his prison term.

{¶ 33} At the sentencing hearing, trial counsel reiterated much of the material included in the PSI report pertaining to appellant's personal and financial information, albeit in the context of urging the court to impose a "minimal sentence." (Aug. 23, 2018 Sentencing Hearing Tr. at 3.) Trial counsel expounded upon the PSI report, stating that appellant "had to do what he had to do for his family" because his wife is scheduled for "high-risk surgery" and he could not afford the school fees for his high school daughter. *Id.* at 5.

{¶ 34} While not expressly stating that it reviewed the PSI report in considering the mandatory fine imposed by R.C. 2929.18(B)(1), the trial court referred to the information contained in the report. In particular, the court asked the state if it knew the name of the bank that appellant claimed set him up in the drug trade in the United States. In addition, the trial court noted that appellant had previously been deported on a drug conviction, and had returned to the United States illegally and again engaged in the drug trade. The trial court noted that it did not find convincing

appellant's expressions of apology and remorse, other than that appellant likely regretted that his family in Mexico was harmed because he was not there to support them with drug activity in the United States. Moreover, a trial court is not required to expressly state that it considered the PSI or the appellant's ability to pay. *Smith*, 10th Dist. No. 16AP-772, 2017-Ohio-7740, at ¶ 47, citing *State v. Parker*, 2d Dist. No. 03CA0017, 2004-Ohio-1313, ¶ 42; *State v. Tate*, 2d Dist. No. 25386, 2013-Ohio-5167, ¶ 54 (where trial court did not expressly state that it considered PSI, reviewing court observed that "in the absence of anything in the record to suggest otherwise, we must presume that the [trial] court made the required considerations [about the defendant's ability to pay] when it reviewed the [PSI]"). *See also State v. LeGrant*, 2d Dist. No. 2013-CA-44, 2014-Ohio-5803, ¶ 13 (finding the trial court considered ability to pay based on its consideration of the PSI).

{¶ 35} Here, the trial court "impose[d] the full $35,000 in fines in the event that [appellant] has any assets that show up." *Id*. at ¶ 11. In addition, as part of its sentencing entry, the trial court explicitly stated that it had "considered Defendant's present and future ability to pay a fine and financial sanction." (Aug. 27, 2018 Jgmt. Entry at 2.). A trial court's statement in a judgment entry that it considered the offender's present and future ability to pay a fine is evidence that the trial court considered the offender's ability to pay. *Smith*, at ¶ 49.

{¶ 36} Appellant contends that the trial court's imposition of fines "in the event that [appellant] has any assets that show up," constitutes an acknowledgement by the trial court that appellant has no present ability to pay the mandatory fines. While it is true that appellant is not currently employed and will not be during his prison confinement, R.C. 2929.19(B)(5) specifically requires a trial court to consider the offender's future ability to pay as well as his present ability to pay. When evaluating the indigency of an offender opposing the mandatory fine, a trial court is not limited to the indigency status of the offender at the time the fine was imposed. *State v. Conn*, 12th Dist. No. CA2014-04-059, 2015-Ohio-1766, ¶ 14, citing *State v. McDowell*, 11th Dist. No. 2001-P-0149, 2003-Ohio-5352, ¶ 69. Here, the trial court's statement regarding "assets that show up" confirms that the trial court expressly considered appellant's future ability to pay the fines. Moreover, a trial court is not precluded from imposing a fine on an able-bodied offender who is fully capable of work but who happens to be indigent and unemployed at the moment of sentencing. *Gipson*, 80 Ohio St.3d at 636; *Smith*, at ¶ 49 (nothing in record suggested that defendant was not an able-bodied person with some employment potential following his release from prison).

{¶ 37} Appellant will be in his early 50's when he is released from prison and, as admitted in the PSI report, is in "excellent" physical condition and has employment experience in auto parts sales and customer service. Although appellant likely will be deported following completion of his prison sentence, no evidence suggests that his past auto parts/customer service experience cannot be applied to employment in Mexico. Indeed, although the PSI report does not specifically so state, it appears that appellant's employment experience occurred in Mexico. Further, the trial court

did not impose a timeframe for payment of the fines. Indeed, R.C. 2929.19(B)(5) contemplates a gradual repayment of fines over a period of time. *State v. Burnett*, 10th Dist. No. 08AP-304, 2008-Ohio-5224, ¶ 9.

{¶ 38} Appellant's reliance on two cases from other appellate districts is misplaced, as both are distinguishable. In *State v. Hale*, 5th Dist. No. 14-CA-00010, 2014-Ohio-4981, the court concluded that trial counsel was ineffective in failing to file an affidavit of indigency alleging that Hale was unable to pay the mandatory fine in R.C. 2929.18 applicable to his felony drug offense. The court based its conclusion, in part, upon trial counsel's assertions at the change of plea hearing that 57-year-old Hale had multiple health problems, including oxygen tank dependence, hypertension, COPD, IBS, coronary artery disease, obstructive sleep apnea, seizure disorder, and complications from a stroke. The court also noted that the affidavit submitted in support of appointment of counsel indicated Hale's source of income to be Social Security disability benefits and that there was no indication in the record that the trial court considered Hale's present and future ability to pay the fine as required by R.C. 2929.19(B)(5). In contrast, and as noted above, the PSI report in the instant case reveals that appellant is in "excellent" health and is medication-free; in addition, the record indicates that the trial court complied with R.C. 2929.19(B)(5).

{¶ 39} In *State v. Andrews*, 1st Dist. No. C-110735, 2012-Ohio-4664, the court held that the trial court committed plain error in ordering Andrews to pay a $10,000 fine pursuant to his second-degree felonious assault conviction. Specifically, the court found that the record contained no evidence that the trial court considered Andrews' present or future ability to pay the fine as required by R.C. 2929.19(B)(5). The court further found that no PSI report was completed and that no evidence was elicited at the sentencing hearing regarding Andrews' present or future ability to pay the fine. The court reasoned that "[b]ecause the record is completely silent on the matter, the trial court committed plain error in ordering Andrews to pay the fine." *Andrews* at ¶ 32. Pursuant to this conclusion, the court also held that trial counsel was ineffective in failing to object to the trial court's imposition of the fine. *Id*. at ¶ 37. In contrast to the instant case, *Andrews* does not involve the imposition of a mandatory fine or the filing of an affidavit of indigency pursuant to R.C. 2929.18(B)(1). Further, the record in this case includes a PSI report and evidence establishing the trial court's consideration of appellant's present or future ability to pay the mandatory fine as required by R.C. 2929.19(B)(5).

{¶ 40} Because the record in this case contains evidence that the trial court considered appellant's present and future ability to pay the mandatory fines and made no determination that he is unable to pay those fines, appellant has failed to demonstrate that his trial counsel was ineffective for failing to file an affidavit of indigency specific to the imposition of mandatory fines, as there is no reasonable probability that had trial counsel done so, the trial court would have found appellant indigent and relieved him of the obligation to pay the fines.

{¶ 42} Having found that appellant's trial counsel was not ineffective in failing to file an affidavit of indigency specific to the mandatory fines pursuant to R.C. 2929.18 or in failing to argue that the two counts of heroin trafficking should merge for purposes of sentencing, we overrule appellant's first and second assignments of error.

*State v. Delgadillo-Banuelos*, 2019 WL 5078717, at *5–8.

### A. Cognizability

To begin, Respondent argues that Petitioner's claim is not cognizable. It is true that a challenge to the state court's imposition of financial sanctions or fines, standing alone, does not provide a basis for federal habeas corpus relief. *See Cruz v. Foley*, No. 1:18CV2834, 2020 WL 3620102, at *4 (N.D. Ohio May 21, 2020), *report and recommendation adopted sub nom. Cruz v. Sloan*, 2020 WL 3618567 (N.D. Ohio July 2, 2020) ("It is well settled that there is no habeas corpus jurisdiction to consider an argument that the petitioner's rights were violated by state court orders relating to noncustodial issues such as fines or restitution orders[.]") (citing *Washington v. McQuiggin*, 529 F. App'x 766, 772 (6th Cir. 2013)). This is so because subject matter jurisdiction exists under § 2254 "'only for claims that a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'"" *Brigner v. Warden, Chillicothe Corr. Inst.*, No. 2:17-CV-1045, 2018 WL 1046954, at *5 (S.D. Ohio Feb. 26, 2018), *report and recommendation adopted*, 2019 WL 2295409 (S.D. Ohio May 30, 2019) (quoting *Washington v. McQuiggin*, 529 F. App'x at 772–73 (quoting *Dickerson v. United States*, 530 U.S. 428, 439 n. 3 (2000); 28 U.S.C. § 2254(a)). Claims challenging the imposition of fines or restitution orders do not satisfy this "in custody" requirement. *See id*. (citing *Washington*, 529 F. App'x at 773; *Mitchell v. Woods*, No.17-1013, 2017 WL 6820127, at *3 (6th Cir. June 26, 2017); *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995)).

Yet, Petitioner does not bring a freestanding challenge to the imposition of fees. Instead, he raises the issue in the context of his claim of ineffective assistance of counsel. (*Petition*, Doc. 1, PAGEID # 6). Referring to *Strickland*, 466 U.S. at 668, Petitioner presented this same claim to the state courts. (*Merit Brief of Ovier Delgaldillo-Banuelos*, Doc. 3, PAGEID # 36, 46–54). Many courts have held that a claim of ineffective assistance of counsel based on an attorney's failure to object to imposition of fines or restitution at sentence likewise does not provide an appropriate claim for federal habeas corpus relief. *See, e.g.*, *Thomas v. Warren*, No. 12-cv-11351, 2012 WL 6115047, at *5 (E.D. Mich. Dec. 10, 2012) (citing *United States v. Thiele*, 314 F.3d 399, 402 (9th Cir. 2002) ("Nor does it matter that [Petitioner] couched [her] restitution claim in terms of ineffective assistance of counsel."); *but see Mullins v. Birkett*, No. 2:09-cv-12515, 2010 WL 764386, at *4 (E.D. Mich. Mar. 4, 2010) (dismissing the claim on the merits). Even assuming the issue may properly be addressed in these proceedings, as discussed below, the record does not reflect a basis for relief.

### B.  Merits

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit has explained the meaning of the standards found in § 2254(d)(1) as follows:

Under the "contrary to" clause, a federal habeas court may grant the writ "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 798 (2019).

Moreover, under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, No. 16-1504, 2017 WL 2241814, at *5 (6th Cir. May 22, 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)). The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Applying this high standard, claim one fails. The trial court advised Petitioner, at the time of his guilty plea, that he faced mandatory fines ranging from $17,000 to $35,000. Petitioner at all times indicated that he understood. (*Transcript*, Doc. 3-1, PAGEID # 275). He had no

questions; denied being pressured to enter a guilty plea; and expressed satisfaction with his attorney. (*Id.*, PAGEID # 276, 279). Upon review, the state appellate court held that the trial court had complied with Ohio law. "In essence, [] the Ohio Court of Appeals disposed of [Petitioner's] claim by applying Ohio law to determine that [Petitioner] could not demonstrate prejudice arising from his attorney's failure to file an affidavit of indigency." *Cruz v. Foley*, No. 1:18-cv-2834, 2020 WL 3620102, at *16 (N.D. Ohio May 21, 2020). This Court is bound by that determination. *Id*. (citing *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)).

Further, the state appellate court held that the filing of an affidavit of indigency would not have assisted Petitioner. *State v. Delgadillo-Banuelos*, 2019 WL 5078717, at *8. So, said the state appellate court, Petitioner's counsel was not ineffective. *Id.* That was not an unreasonable application of *Strickland* or an unreasonable view of the facts. Accordingly, claim one is without merit.

## IV. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Petition be **DENIED**, and this action be **DISMISSED**.

## <u>PROCEDURE ON OBJECTIONS</u>

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in

part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

IT IS SO ORDERED.


Date:   June 4, 2021                                    s/Kimberly A. Jolson
                                                        KIMBERLY JOLSON
                                                        UNITED STATES MAGISTRATE JUDGE